UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. 1:19-CR-00033 |
| | ) | |
| | ) | (BRANN, D.J.) |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| RONSHEEK J. BASKERVILLE, | ) | |
| Defendant | ) | |

MEMORANDUM FOR COVID-19 BAIL DECISION
Defendant Baskerville's Motion for Bail, Doc. 57

## I.    INTRODUCTION

Before the Court is Mr. Baskerville's Motion for Bail (Doc. 57). Along with

the Motion, a Brief (Doc. 58), the required notice (Doc. 59) requesting a hearing,

and the Government's Brief in Opposition (Doc. 61) were filed. For the reasons

detailed in this Memorandum, the request for a hearing and release from detention

will be denied.

## II.    BACKGROUND & PROCEDURAL HISTORY

This case began with the indictment of Mr. Baskerville. (Doc. 1). Mr.

Baskerville had his Initial Appearance and Arraignment in front of Magistrate Judge

Schwab on February 5, 2019. At that time, Judge Schwab determined that Mr.

Baskerville was a danger to the community and a flight risk. (Doc. 12). Mr.

Baskerville was remanded to federal custody. *Id.*

On February 5, 2019, Judge Schwab issued a Scheduling Order, scheduling, among other things, jury selection and trial for April 1, 2019, in Williamsport in front of Judge Brann. (Doc. 13). After Judge Brann granted six (6) Motions to Continue (Docs. 14, 18, 21, 37, 45, 55), jury selection and trial were scheduled for June 1, 2020.

On August 22, 2019, a Superseding Indictment was filed against Mr. Baskerville. (Doc. 24). Mr. Baskerville's arraignment as to the Superseding Indictment was held on September 12, 2019, in Williamsport. (Doc. 28).

On December 3, 2019, Mr. Baskerville filed a Motion to Dismiss (Doc. 39) and a Brief in Support (Doc. 40). On January 24, 2020, the Government filed a Brief in Opposition (Doc. 48). On February 18, 2020, Mr. Baskerville filed a Reply Brief (Doc. 53). That Motion is still pending at this time.

On April 29, 2020, Mr. Baskerville filed a Motion for Pretrial Release (Doc. 57) and a Brief in Support (Doc. 58), citing COVID-19 concerns. That same day, I issued an Order instructing the parties to confer by telephone to determine if a joint resolution could be reached. On May 1, 2020, Mr. Baskerville filed Notice (Doc. 59) that a joint resolution could not be reached regarding his pretrial detention. Mr. Baskerville also requested an in-court hearing. On May 6, 2020, the Government filed its Brief in Opposition (Doc. 61).

### III.   COURT PROCEDURE FOR COVID-19 CASES

Anticipating a significant number of requests for reconsideration of bail in light of the COVID-19 pandemic, the Court instituted an expedited procedure to hear these cases in an orderly and deliberate fashion. The filing of a bail motion citing COVID-19 as a reason for release from detention will be specifically designated and a docket entry will automatically notify counsel about the expedited procedures. That entry was made in this case on April 29, 2020.

### IV.   STANDARD OF REVIEW

The Court has continuing jurisdiction to review its own bail decisions. In this case the request for reconsideration regarding bail is made under 28 U.S.C. § 3141, which is the general release and detention authority of the Court, and 28 U.S.C. § 3142(i) which states:

> The judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.

18 U.S.C. § 3142.

The question presented by this Motion requires an analysis of the Bail Reform Act under pandemic conditions.  Does this petition present a "compelling reason" to alter a previous bail decision?

## V.    REVIEW OF PREVIOUS BAIL DECISION

Judge Schwab issued the original Order of Detention (Doc. 12) on February 5, 2019. A Pretrial Services Report found that Mr. Baskerville posed a risk of nonappearance based on (1) the offense charged and/or Mr. Baskerville's conduct during the arrest for the instant offense, (2) Mr. Baskerville's substance abuse history, (3) Mr. Baskerville's supervision status and compliance, and (3) Mr. Baskerville's criminal history. (Pretrial Services Report, p. 5, dated Feb. 4, 2019) The Pretrial Services Report provided noted Mr. Baskerville's criminal history, particularly the nature of the offenses and previous supervision violations, in determining that Mr. Baskerville poses a danger to the community. *Id.* At that time, Judge Schwab found Mr. Baskerville to be a danger to the community and a flight risk. *Id.* Mr. Baskerville has remained detained.

VI.    DISCUSSION OF THE COVID-19 PANDEMIC

We are mindful of the unprecedented magnitude of the COVID-19 pandemic and the extremely serious health risks it presents.[1] We are also cognizant that the President of the United States has declared a national emergency and that the Governor of the Commonwealth of Pennsylvania[2] has also declared a state of emergency to address the needs of the nation and the Commonwealth respectively. We also recognize that public health officials have strenuously encouraged the public to practice "social distancing," to hand-wash and/or sanitize frequently, and to avoid close contact with others—all of which presents challenges in detention

---

[1] World Health Organization, "WHO characterized COVID-19 as a pandemic" March 25, 2020, available at https://www.who.int/emergencies/diseases/novel-coronavirus-2019/events-as-they-happen

[2] Governor Thomas Wolf proclaimed the existence of a disaster emergency throughout the Commonwealth pursuant to 35 Pa.C.S. §7301(c) on March 6, 2020. He ordered all non-essential business in the Commonwealth to close on March 20, 2020, and he extended the closure of non-essential businesses and schools "indefinitely" to slow the progression of the pandemic. "Gov. Wolf and Sec. of Health Expand 'Stay at Home' Order to Carbon, Cumberland, Dauphin and Schuylkill Counties, Extend School Closures Indefinitely," March 30, 2020, available at https://www.governor.pa.gov/newsroom/gov-wolf-and-sec-of-health-expand-stay-at-home-order-to-carbon-cumberland-dauphin-and-schuylkill-counties-extend-school-closures-indefinitely/.   That Stay at Home Order was extended to all 67 counties on April 2, 2020 to be effective thru April 30, 2020. https://www.pa.gov/guides/responding-to-covid-19/#StayatHomeOrder (last accessed April 4, 2020).

facilities. *See United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857 *2 (D. Md. Mar. 17, 2020). As of May 6, 2020, 121 cases have been issued around the country citing *Martin*. Of the cases that cite *United States v. Martin,* most of the decisions were to detain the defendant. In *United States v. Davis*, the judge denied the government motion for pretrial detention because the detention facility already had cases of COVID-19 and the individual was not a flight risk and posed no serious threat to the community. *United States v. Davis*, No. ELH-20-09, 2020 WL 1529158 (D.Md. Mar. 30, 2020). The case also relied heavily on expert opinion that pretrial facilities are poorly equipped to manage the highly contagious and potentially deadly coronavirus. *Id.* A majority of the cases that granted temporary release were people detained due to immigration proceedings. *See e.g.*, *Basank v. Decker*, No. 20-cv-2518 AT, 2020 WL 1481503, (S.D.N.Y. Mar. 26, 2020) and *Coronel, et al. v. Decker, et al.*, No. 20-cv-2472 AJN, 2020 WL 1487274 (S.D. N.Y. Mar. 27, 2020). Additionally, there was one case that only granted review of bail hearings to be assessed on a case to case basis. See *Karr v. State*, No. 4FA-19-00872CR, 2020 WL 1456469 (Alaska Ct. App. Mar. 24, 2020).

In a precedential opinion analyzing a COVID-19 release request in the context of the compassionate release provisions of the First Step Act, the Third Circuit concluded that COVID-19 risk alone does not require release where the prison system has a plan in place to deal with the pandemic.

Page 6 of 22

We do not mean to minimize the risks that COVID-19 poses in the federal prison system, particularly for inmates like Raia. But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread. *See generally* Federal Bureau of Prisons, *COVID-19 Action Plan* (Mar. 13, 2020, 3:09 PM), https://www.bop.gov/resources/news/20200313_covid-19.jsp. Given BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance. And given the Attorney General's directive that BOP "prioritize the use of [its] various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic," we anticipate that the exhaustion requirement will be speedily dispatched in cases like this one. Memorandum from Attorney Gen. to Dir., Bureau of Prisons 1 (Mar. 26, 2020), https://www.justice.gov/file/1262731/download. So we will deny Raia's motion.

*U.S. v. Raia,* 20-1033, slip op. at 8 (3d Cir. April 2, 2020)

On March 31, 2020, Judge Jones of this Court ordered the immediate release of fourteen men and women held in ICE civil detention in Pike, Clinton and York County facilities. According to Judge Jones, "Each of the petitioners suffers from chronic medical conditions and faces an imminent risk of death or serious injury if exposed to Covid-19." *Thakker v. Doll*, 1:20-cv-0480, slip op. at 2 (M.D. Pa. March 31, 2020). Ruling on their habeas "conditions of confinement" petitions[3] he found

---

[3] Petitioners invoked the jurisdiction of the Court under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346 (original jurisdiction), 28 U.S.C. § 2241 (habeas

that "…a remedy for unsafe conditions need not await a tragic event." *Thakker v. Doll*, 1:20-cv-0480, slip op. at 6 (M.D. Pa. March 31, 2020). His review of the safety procedures at these three immigration facilities found they were insufficient to overcome the speculative risk of infection and death for an "imminent irreparable harm" finding in the TRO context.

> The Petitioners' claim is rooted in imminent, irreparable harm. Petitioners face the inexorable progression of a global pandemic creeping across our nation—a pandemic to which they are particularly vulnerable due to age and underlying medical conditions. At this point, it is not a matter of *if* COVID-19 will enter Pennsylvania prisons, but *when* it is finally detected therein. It is not unlikely that COVID-19 is already present in some county prisons—we have before us declarations that portions of the Facilities have been put under ineffective quarantines due to the presence of symptoms similar to COVID-19 among the inmate population. Indeed, we also have reports that a correctional officer at Pike has already tested positive for COVID-19. (footnotes omitted).
>
> . . . .
>
> Based upon the nature of the virus, the allegations of current conditions in the prisons, and Petitioners' specific medical concerns, detailed below, we therefore find that Petitioners face a very real risk of serious, lasting illness or death. There can be no injury more irreparable.

*Thakker v. Doll*, 1:20-cv-0480, slip op. at 8,9 (M.D. Pa. March 31, 2020).

Judge Jones cites several immigration detention cases where release has been ordered. *Thakker v. Doll*, 1:20-cv-0480, slip op. at 18-20 (M.D. Pa. March 31, 2020.

---

jurisdiction), and Article I, Section 9, clause 2 of the United States Constitution (the Suspension Clause) (Doc. 1, p. 6).

He balanced the public interest in continued detention this way: "Finally, the public interest favors Petitioners' release. As mentioned, Petitioners are being detained for civil violations of this country's immigration laws." *Thakker v. Doll*, 1:20-cv-0480, slip op. at 23 (M.D. Pa. March 31, 2020).

In concluding that immediate release was required in these fourteen cases Judge Jones said:

> In times such as these, we must acknowledge that the *status quo* of a mere few weeks ago no longer applies. Our world has been altered with lightning speed, and the results are both unprecedented and ghastly. We now face a global pandemic in which the actions of each individual can have a drastic impact on an entire community. The choices we now make must reflect this new reality.
>
> Respondents' Facilities are plainly not equipped to protect Petitioners from a potentially fatal exposure to COVID-19. While this deficiency is neither intentional nor malicious, should we fail to afford relief to Petitioners we will be a party to an unconscionable and possibly barbaric result. Our Constitution and laws apply equally to the most vulnerable among us, particularly when matters of public health are at issue. This is true even for those who have lost a measure of their freedom. If we are to remain the civilized society we hold ourselves out to be, it would be heartless and inhumane not to recognize Petitioners' plight.

*Thakker v. Doll*, 1:20-cv-0480, slip op. at 24 (M.D. Pa. March 31, 2020).

The language of this case is strong and persuasive in the civil detention context.[4]  However, to apply this reasoning to prisons and jails across the board in

---

[4] The Government appealed Judge Jones's decision to the Third Circuit and requested an administrative temporary stay. The Third Circuit granted the temporary

all criminal cases is a much different matter. Different interests must be balanced when a criminal defendant has been detained only after a finding that no condition or combination of conditions will assure the presence of the defendant and the safety of the community. The balancing is likewise different when a criminal defendant is serving a sentence. The question of civil detention, early parole or compassionate release is not before me. This is a decision about bail during a pandemic.

I agree with the Courts that have held that a defendant is not entitled to temporary release under § 3142(i) based solely on generalized COVID-19 fears and speculation. *United States v. Clark*, No. 19-40068-01-HLT, 2020 WL 1446895 *3 (D. Kan., Mar. 25, 2020). While the court remains sympathetic to the generalized risk regarding the possible complications caused by the COVID-19 virus "[s]uch speculation does not constitute a 'compelling reason' for temporary release." *United States v. Loveings*, Cr. No. 20-51, 2020 WL 1501859 *3 (W.D. Pa. Mar. 30, 2020).

I believe I must make an individualized determination as to whether COVID-19 concerns are compelling in a particular case to justify temporary release under § 3142(i).

---

stay request within hours. On April 21, 2020, the Third Circuit issued an Opinion concluding that it has jurisdiction to hear the Government's appeal of Judge Jones's decision. The Third Circuit will address the merits of the Government's appeal after the parties have had the opportunity to brief the issues. *See Hope v. Warden York County Prison*, No. 20-1784, 2020 WL 1922372 (3d Cir. Apr. 21, 2020).

## VII.   FLIGHT RISK AND DANGER TO THE COMMUNITY

Mr. Baskerville does not address flight risk or danger to the community in his Brief in Support. Instead, Mr. Baskerville argues that there are special circumstances warranting temporary release. I address these arguments later in this Opinion.

Regarding risk of flight, the Government argues:

Baskerville has been indicted for possessing a firearm while on federal supervised release, after having been convicted of four separate felony drug delivery violations. He faces a mandatory sentence of 15 years and a maximum penalty of life imprisonment, stiff penalties that give him a strong motivation to flee. Indeed, in this case Baskerville fled from police while operating a vehicle, and then on foot before being apprehended – and he has resisted arrest and fled from the police on multiple occasions prior to this offense. In addition, the evidence of Baskerville's drug trafficking activities is strong and includes admissions to police that he possessed the firearm and ammunition charged in the case.

(Doc. 61, p. 23).

Regarding dangerousness, the Government argues:

Baskerville also presents a proven supervision risk. He has a significant and troubling criminal history that includes four convictions for felony controlled substance offenses, possession of firearms by a convicted felon, counterfeiting, and criminal trespass, and multiple state parole violations and revocations. But no less important, while on federal supervised release, after serving a 100-month person term for negotiating counterfeit currency and illegally possessing a 9mm handgun, Baskerville committed two new criminal violations – possession with intent to deliver on April 15, 2015, just weeks after commencing supervised release, and the instant offense, committed on January 27, 2018, only seven months after supervised release was first revoked. Based on this track record while on parole and supervised

release, the inescapable conclusion is that nothing short of detention will ensure Baskerville's appearance as required and the safety of the community.

*Id.* at pp. 23-24.

The Government also provides a lengthy discussion of Mr. Baskerville's criminal history, including multiple convictions while on supervision. *Id.* at pp. 13-20.

I find Mr. Baskerville's extensive criminal history, particularly while on supervision, to be troubling. Based on the evidence before me, I conclude that Mr. Baskerville remains a flight risk and a danger to the community.

## VIII.  COVID-19 BAIL FACTORS BEYOND STANDARD CONSIDERTIONS

Plaintiff alleges three main reasons to justify temporary release: (1) his own health conditions; (2) lockdown at Columbia County Prison makes his incarceration more punitive than regulatory in violation of the 5th amendment; and (3) his speedy trial and assistance of counsel rights are in jeopardy.

### A.  SPECIFIC HEALTH CONCERNS OF THIS DEFENDANT

Mr. Baskerville argues that he has special health risks warranting temporary release in light of the COVID-19 pandemic. Mr. Baskerville states that he has asthma and high blood pressure. Mr. Baskerville argues generally about prison conditions

and COVID-19 – e.g., the inability to follow social distancing recommendations.

(Doc. 58, pp. 7-9). Further, Mr. Baskerville notes a

> trend in recent court decisions, both in this district and throughout the country, to discount the dangers presented by COVID-19 to high risk people by pointing out that there are no current cases at the prison and that the prison is taking sufficient precautions to protect the correctional officers, the third-party contractors, the vendors, and the inmates. Furthermore, the decisions also tend to consider motions for release by a high risk people (sic) as "generalized," partially because the movant is not currently showing symptoms of COVID-19.

*Id.* at pp. 7-8.

We remain sympathetic to Mr. Baskerville's concerns regarding COVID-19 and the possibility of health complications, but "[s]uch speculation does not constitute a 'compelling reason' for temporary release." *United States v. Loveings*, Cr. No. 20-0051, 2020 WL 1501859, at *3 (W.D. Pa. Mar. 20, 2020). District courts in the Third Circuit have reached that same conclusion regarding temporary release, even in cases where the defendant indicated respiratory conditions. *United States v. Pritchett*, CR 19-280, 2020 WL 1640280, at *3 (W.D. Pa. Apr. 2, 2020) (despite being sympathetic to defendant's medical conditions, including asthma, speculation concerning possible future conditions in jail does not constitute a "compelling reason" for temporary release.); *United States v. Jones*, 2:19-CR-00249-DWA, 2020 WL 1511221, at *3 (W.D. Pa. Mar. 29, 2020) (holding that while the defendant suffered from hypertension, sleep apnea, and asthma – respiratory issues making the

defendant at a higher risk for COVID-19 – his present health conditions were not sufficient to establish a compelling reason for release in light of the danger to the community posed by his release and the efforts undertaken at the jail to combat the spread of the virus). Similarly, I find Mr. Baskerville's argument regarding high blood pressure to be speculative. I do not find Mr. Baskerville's argument regarding his specific health issues to be sufficient to establish a compelling reason for pretrial release.

## B.  DUE PROCESS CONCERNS REGARDING CONTINUED CONFINEMENT

Mr. Baskerville argues that his continued pretrial detention violates his due process rights under the Fifth Amendment. Mr. Baskerville argues that he spends a vast majority of the day confined to his cell. Mr. Baskerville argues that these conditions of his confinement amount to a punishment for a crime of which he has not yet been convicted. (Doc. 58, pp. 5-6).

A federal pretrial detainee's constitutional rights flow from the due process clause of the Fifth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). "Under *Bell*, a 'particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive purpose, or when the restriction is excessive in light of that purpose.'" *Bistrian v. Levi*, 696 F.3d 352, 373 (3d Cir. 2012). "Absent a showing of an expressed intent to punish on the part

of the detention facility officials, that determination generally will turn on 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]." *Bell*, 441 U.S. at 538-539 (quoting *Kennedy v. Mendoza-Martinez*, 372 U.S. at 168-69 (1963)).

I am not persuaded by Mr. Baskerville's argument that his due process rights have been violated. Mr. Baskerville has not demonstrated an express intent by the prison or prison staff to punish him. Further, the measures taken by Columbia County Prison are a safety precaution in response to the COVID-19 pandemic. The steps taken by Columbia County Prison, including extended confinement of inmates to cells, appear to be consistent with the procedures recommended by the CDC. Thus, I conclude that Mr. Baskerville's Fifth Amendment due process claim fails at this time.

## C. SIXTH AMENDMENT RIGHTS

Mr. Baskerville argues that his Sixth Amendment rights to a speedy trial and assistance of counsel will be violated if he is not released.

First, I address Mr. Baskerville's claim that his Sixth Amendment speedy trial rights will be violated if he is not released. In *Barker v. Wingo*, 407 U.S. 514 (1972), the United States Supreme Court set forth a four-factor balancing test for courts to determine whether a defendant's Sixth Amendment right to a speedy trial was

violated. The four factors are: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker*, 407 U.S. at 530. As the Supreme Court has recognized, these factors have no "talismanic qualities," and none is "either a necessary or sufficient condition to the finding of a deprivation of the right to speedy trial." *Id.* at 533. Rather, they are "related factors" that "must be considered together with such other circumstances as may be relevant." *Id.*

The constitutional requirements of the Sixth Amendment remain a basis to attack pretrial delay, even if a defendant's statutory rights under the Speedy Trial Act were not violated. 18 U.S.C. § 3173.

Mr. Baskerville is correct that COVID-19 does not eliminate his Sixth Amendment speedy trial rights. However, Mr. Baskerville's pretrial detention does not, at this time, rise to the level of a constitutional violation. On the current federal charge, Mr. Baskerville was ordered detained on February 5, 2019. (Doc. 12). Mr. Baskerville's trial was originally scheduled for April 1, 2019. (Doc. 13). After six (6) Motions to Continue, all filed by Mr. Baskerville, trial was scheduled for June 1, 2020. I do not find Mr. Baskerville's argument regarding speedy trial to be persuasive.

Most of Mr. Baskerville's Sixth Amendment argument is regarding his ability to adequately prepare for trial. Mr. Baskerville argues:

If Baskerville remains detained pending his June 1, 2020 trial, he will not be able to adequately prepare for his trial with the assistance of his counsel. Currently, he is locked down most of the day. Furthermore, he cannot personally meet with counsel to prepare for trial. Attorney-client conferences through telephone calls and Skype meetings are inadequate to protect Baskerville's Sixth Amendment rights. If he were to be released to his home, under strict conditions, including home incarceration, he would be able to communicate with counsel seven days a week and whatever amount of time is necessary to prepare for trial could be utilized. On the other hand, if the attorney-client contacts continue as they are, given the dangerous conditions brought about by the COVID-19 crisis, Baskerville will be unable to prepare for trial of his case in a speedy fashion with the assistance of counsel.

In the pre-COVID-19 environment, though incarcerated, Baskerville could consult with undersigned counsel at the jail during most of the hours of the working day and at night, if necessary. Currently, in-person physical visits are prohibited and in-prison telephonic conferences are awkward, inadequate, and dangerous, if undersigned counsel were to be carrying the COVID-19 virus, but happened to be pre-symptomatic or asymptomatic. Furthermore, it becomes more awkward, inadequate, and dangerous, to attempt in-prison telephonic conferences with the presence of investigator or expert who is assisting in the investigation and preparation for trial.

(Doc. 58, pp. 4-5).

According to the Government, Mr. Baskerville proposes that if released, he will live with his 67-year old aunt in Harrisburg.[5] (Doc. 61, p. 4, n. 1). Mr. Baskerville does not explain how release, generally or specifically to Harrisburg, will alleviate the difficulty in communication with his attorney. Instead, Mr.

---

[5] Mr. Baskerville does not provide his release plan in either his Motion for Pretrial Release (Doc. 57) or his Brief in Support (Doc. 58).

Baskerville alleges that current prison restrictions make communicating with his attorney difficult. Mr. Baskerville's attorney is located in Williamsport. At this time, travel throughout Pennsylvania's counties is still restricted in light of COVID-19. If released, Mr. Baskerville's communication with his attorney would still be limited to phone calls and video conferencing. Mr. Baskerville has not explained how release would mitigate any limitations on assisting his attorney in preparing a defense.

### D. Specific Conditions in the Place of Detention

"The Court is mindful that it bears a fiduciary responsibility to that those that are detained in jails and prisons. The incarcerated look to the Courts for protection of their health, welfare and personal rights in general. However, the Courts are not on the front line. That space is rightly occupied by corrections officials and their administration."[6] The Chief Judge of this Court issued Standing Order 20-5 on March 25, 2020, requiring all detention facilities where persons are being held by order of this court to notify the Chief Judge and the judicial officer who signed the detention order if a federal detainee is in medical isolation or quarantine for any reason.[7] As of the filing of this Opinion, no notice has been received from Columbia

---

[6] *United States v. Williams*, No. PWG-13-544, 2020 WL 1434130 (slip copy) (D. Md. Mar. 24, 2020).

[7] "…Further, each detention center shall promptly notify the Marshal for this District of any federal detainee who is in medical isolation or

County Prison that Mr. Baskerville is in medical isolation or quarantine for any reason.

Mr. Baskerville argues generally about the conditions at Columbia County Prison. Mr. Baskerville raises concerns about the coming and going of individuals at Columbia County Prison (i.e., inmates, prison staff, vendors). Further, Mr. Baskerville states that because prisons are merely screening for symptoms of COVID-19, any of these individuals could be asymptomatic or pre-symptomatic carriers of COVID-19, not show symptoms, and introduce COVID-19 to the prison undetected.

The Government alleges that Columbia County Prison "has implemented policies and procedures intended to protect inmates and staff to the extent possible from the risks of COVID-19 and to address cases where individuals show signs or test positive for the COVID-19 virus." (Doc. 61, p. 5). The Government alleges that the measures taken at Columbia County Prison "include screening and testing of

---

quarantine at their facility for any reason, promptly upon the entry of such detainee into such status. The Marshal shall then so notify the undersigned and the judicial officer who entered the Order of commitment of such status.

The Clerk's Office is DIRECTED to transmit a copy of this Order to the U.S. Marshal, who shall advise each involved detention center of its content, and who shall provide a copy of same to each detention center and each relevant law enforcement agency."

Standing Order 20-5, https://www.pamd.uscourts.gov/news/standing-order-2020-005 (last accessed April 4, 2020).

inmates, visitors, and staff, designation of areas in the prison for isolation and

quarantine, and the use of personal protective equipment." *Id.* Further, the

Government provides a memorandum with the detailed procedures undertaken at

Columbia County Prison in response to COVID-19. (Doc. 61-1). These precautions

seemed to be consistent with the CDC Guidelines for Detention Facilities.[8] The

Pennsylvania Supreme Court issued an Order on April 3, 2020 directing each county

president judge to work with the relevant stakeholders to fashion localized plans for

dealing with COVID-19 in county jails:

> We DIRECT the President Judges of each judicial district to coordinate
> with relevant county stakeholders to ensure that the county correctional
> institutions in their districts address the threat of COVID-19, applying
> the recommendations of public health officials, including the CDC's
> Interim Guidance on Management of Coronavirus Disease 2019
> (COVID-19) in Correctional and Detention Facilities (Mar. 23, 2020).
> If utilization of public health best practices is not feasible due to the
> population of the county correctional institutions, President Judges
> should consult with relevant county stakeholders to identify individuals
> and/or classes of incarcerated persons for potential release or transfer
> to reduce the current and future populations of the institutions during
> this health crisis with careful regard for the safety of victims and their
> communities in general, with awareness of the statutory rights of
> victims, and with due consideration given to public health concerns
> related to inmates who may have contracted COVID-19. Moreover,
> consistent with these above considerations, President Judges are to
> undertake efforts to limit the introduction of new inmates into the
> county prison system.[9]

---

[8]    http://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/ guidance-correctional-detention.html.

[9] *In Re: The Petition Of The Pennsylvania Prison Society*, No. 70-MM-2020, slip op. at pp. 2-3 (Pa. April 3, 2020) (per curiam).

There is nothing before this Court to indicate that any specific problem has developed at Columbia County Prison.

### E.  NUMBER OF CONFIRMED CASES

Based on the evidence before me at this time, there are no confirmed cases of COVID-19 in Columbia County Prison. In all of Columbia County, where the prison is located, there are three hundred and two (302) cases and sixteen (16) deaths, as of 9 a.m. today (May 7, 2020). While these numbers are not guaranteed into the future, they do not suggest an immediate and unavoidable risk. According to the Government, Mr. Baskerville wishes to be released to his aunt in Harrisburg. In all of Dauphin County, there are seven hundred and eleven (711) cases and twenty-nine (29) deaths, as of 9 a.m. today.

### F.  RELEASE PLAN

Mr. Baskerville does not provide a release plan to the Court. Instead, he states that the release plan has been provided to the Government.[10] According to the Government, Mr. Baskerville proposes release to live with his aunt. (Doc. 61, p. 32). Without information regarding Mr. Baskerville's release plan, I cannot comment on whether a potential third-party custodian would be appropriate.

---

[10] "Baskerville has presented United States Probation, and the United States Attorney's Office, with information about where Baskerville intends to live, if released, and with whom." (Doc. 57, ¶ 13).

IX.    CONCLUSION

For all of the reasons set forth above, Mr. Baskerville has failed to show that temporary release is appropriate at this time. Therefore, his motion for bail will be denied. An appropriate order shall follow.

Date: May 7, 2020                              BY THE COURT

                                               *s/William Arbuckle*
                                               William Arbuckle
                                               U.S. Magistrate Judge