IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 1:19-CR-00033 |
| | : | |
| v. | : | Judge Jennifer P. Wilson |
| | : | |
| RONSHEEK J. BASKERVILLE | : | |

## RONSHEEK J. BASKERVILLE'S SENTENCING MEMORANDUM WITH OBJECTIONS

Before the court for sentencing is Defendant, Ronsheek J. Baskerville, who has remained in custody since approximately January 27, 2018, when he was arrested in connection with this case. On March 15, 2022, a jury convicted Baskerville of felon in possession of ammunition but acquitted him of possession of a firearm. (Doc. 149; *see* Doc. 24, ***Second Superseding Indictment***.) Following trial, Baskerville filed a post-trial motion, which is still pending. (Doc. 167.)

Post-trial, the United States Probation Office also has prepared a Presentence Investigation Report ("PSR").  In the PSR, Probation concluded that Baskerville is subject to a 15-year mandatory minimum under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). (Doc. 174, ¶ 72; *see id.*, ¶¶ 19, 37.) Regarding the Sentencing Guidelines, Probation calculated his offense level as 28 under U.S.S.G. § 2K2.1 (applicable to firearms-offense conduct). (Doc. 174, ¶¶ 13–14, 18.) Probation arrived there by adding a four-level adjustment under U.S.S.G. § 2K2.1(b)(6)(B) (adjustment for possessing a firearm or ammunition in

connection with another felony offense) to the base offense level of 24 under U.S.S.G. § 2K2.1(a)(2) (relating to defendants with two or more felony crimes of violence of controlled-substance offenses). (Doc. 174, ¶¶ 13–14.) Because Probation concluded that Baskerville is subject to the ACCA and "used or possessed a firearm or ammunition in connection with a controlled substance offense," it ultimately determined, however, that his enhanced- and total-offense levels were 34 under U.S.S.G. § 4B1.4(b)(3)(A).  (Doc. 174, ¶¶ 19, 21.)

Concerning his criminal-history category, Probation concluded that Baskerville has a criminal-history score of 11. (Doc. 174, ¶¶ 35–37.) With that score, Baskerville would fall within criminal-history category V.  (*Id.*, ¶ 37.)  But because Probation determined that Baskerville is subject to the ACCA and "used or possessed [a] firearm or ammunition in connection with . . . a controlled substance offense," Probation also concluded that he was subject to an enhanced criminal-history category of VI.  (*Id.*); s*ee* U.S. SENTENCING GUIDELINES MANUAL § 4B1.4(c)(2) (U.S. SENTENCING COMM'N 2021). Category VI combined with offense level 34 results in a Guidelines range of 262–327 months' imprisonment. (Doc. 174, ¶ 73.)

In this memorandum, Baskerville reasserts his objections to the PSR.  (*See* Doc. 175, ***Addendum to PSR with Objs.***)  If the court sustains his objections so that the ACCA and U.S.S.G. § 2K2.1(b)(6)(B) do not apply, Baskerville would not be subject to a 15-year mandatory minimum, and his offense level would be 12 under U.S.S.G. § 2K2.1(a)(7). With a criminal-history category V (for having 11 criminal-history points), Baskerville's Guidelines range would be 27–33 months. And, as more fully set forth below, upon consideration of the sentencing factors at 18 U.S.C. § 3553(a), Baskerville respectfully requests the court to impose an individualized sentence of "time served," given his detention since approximately January 27, 2018.

## OBJECTIONS TO APPLICATION OF THE ACCA

### A.   The ACCA Does Not Apply Because Baskerville Does Not Have Previous Convictions For A "Violent Felony" Or "Serious Drug Offense."

Probation asserts in the PSR that Baskerville has four previous convictions under Pennsylvania law that qualify for application of the ACCA. (Doc. 174, ¶ 19.)  Each conviction, as noted in the PSR, involved his possession with intent to deliver <u>cocaine</u>.  (*Id.*, ¶¶ 19, 24, 26, 27, 31.) Thus, Probation views Baskerville as having previous convictions for "serious drug offenses." Baskerville objects because the Pennsylvania definition of cocaine is broader in scope than its

federal counterpart, thus rendering the ACCA inapplicable. The "categorical approach" guides the analysis.

Thereunder, if a "state law governing a particular offense criminalizes more conduct than its generic federal counterpart, then a state conviction for that offense may not count toward the ACCA's requirement of three prior offenses." *United States v. Brown*, --- F.4th ----, 2022 WL 3711868, at *2 (3d Cir. Aug. 29, 2022). That "requires courts to compare federal and state law" by "look[ing] solely at the elements of the compared crimes and . . . ignor[ing] the particular facts of a case." *Id.* (citing *Mathis v. United States*, 579 U.S. 500, 504 (2016)); *see also Salmoran v. Attorney General*, 909 F.3d 73, 81–82 (3d Cir. 2018) (rejecting "realistic probability" inquiry when the elements of the prior state conviction plainly fail to match the corresponding federal offense).

Because the Third Circuit has held that Pennsylvania's drug possession and distribution offense is divisible by type of drug, the "modified" categorical approach is required. *United States v. Abbott*, 748 F.3d 154, 158–59 (3d Cir. 2014). That approach allows courts to look at available *Shepard* documents to confirm convictions: here that means confirming the type of drug (i.e., cocaine or marijuana) involved in Baskerville's drug-delivery convictions. *See, e.g., United States v. Miller*, 480 F. Supp. 3d 614, 618 (M.D. Pa. 2020) (reviewing *Shepard* documents solely to confirm that the defendant's prior conviction was for

4

possession with intent to deliver <u>marijuana</u>, not necessarily hemp or Cannabis sativa L. with a THC concentration at or below 0.3 %); *see also Shepard v. United States*, 544 U.S. 13, 20, 26 (2005).

> **1.    Before The Instant Criminal Conduct, Ioflupane Was Removed As A Federally-Regulated Controlled Substance And Is Not Encompassed Within The Federal Definition Of Cocaine.**

Under 18 U.S.C. § 924(e), "serious drug offense" is defined, in relevant part, as "an offense under State law, involving the manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. § 802)), for which a maximum term of [10] years imprisonment is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii). Thus, for the ACCA to apply, Baskerville's Pennsylvania-based convictions must have involved possession with intent to distribute a controlled-substance, <u>as defined in the federal Schedules</u>, and been punishable by a maximum term of 10 years' imprisonment.  At issue is whether Pennsylvania's definition of "cocaine" is broader than the definition under the federal Schedules.

To define "cocaine," section 924(e)(2)(A)(ii) expressly cross-references the Controlled Substances Act Schedules at 21 U.S.C. § 802. Those Schedules in effect at the time the instant federal crime occurred are controlling.

*Brown*, 2022 WL 3711868; *see United States v. Jackson*, 36 F.4th 1294, 1300 (11th Cir. June 10, 2022) (concluding that "due-process considerations require[d] . . . use [of] the iteration of the . . . Schedules . . . in effect when Jackson possessed the firearm that undergird[ed] his federal conviction [then] pending").

In September 2015, three years before the indicted criminal conduct in this case, federal law removed Ioflupane from regulation as a controlled substance. *See Jackson*, 36 F.4th at 1301, 1302 (discussing Ioflupane and its removal from the federal Schedules in September 2015). As a result, since September 2015, "a cocaine-related offense that involved . . . [I]oflupane has not involved a federal[] 'controlled substance' for purposes of § 924(e)(2)(A)(ii)." *Jackson*, 36 F.4th at 1302. In kind, as of 2015, the federal definition of cocaine does not encompass Ioflupane.

> **2.     At The Time Of Baskerville's Relevant Pennsylvania Convictions, Pennsylvania Law Criminalized Possession Of Ioflupane As A Cocaine-Related Offense.**

Consistent with the plain language of § 924(e), which refers to "previous convictions," the next step is to examine the elements of pertinent State convictions, at the time of those convictions. *Jackson*, 36 F.4th at 1302 (quoting *McNeill v. United States*, 563 U.S. 816, 821 (2011)). Again, the only element at issue is the meaning of "controlled substance," specifically cocaine.

Pennsylvania's Schedules of Controlled Substances regulated then, as it does now:

> Coca leaves and any salt, compound, derivative, or preparation of coca leaves, and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of th[o]se substances, but shall not include decocainized coca leaves or extracts of coca leaves, which extracts do not contain cocaine or ecgonine.

35 P.S. § 780-104(2)(i)(4). That description encompasses Ioflupane which "is derived from cocaine via ecgonine." *Jackson*, 36 F.4th at 1301. Accordingly, at the time of Baskerville's Pennsylvania convictions for possession with intent to deliver cocaine, Pennsylvania law criminalized (as it still does) possession with intent to deliver Ioflupane.

### 3.   An Element-By-Element Comparison Demonstrates That Pennsylvania Law Sweeps Broader Than Federal Law.

It is apparent that Pennsylvania law defined (and still defines) cocaine broader than its relevant federal counterpart. With respect to cocaine-related offenses, Pennsylvania's law then (and now) criminalizes more conduct than the federal analogue. Specifically, Pennsylvania statutorily criminalizes possession with intent to deliver Ioflupane (as a form of cocaine) when, as of September 2015 (before the indicted conduct in the instant case), federal law does not.  In this circumstance, where Pennsylvania law sweeps more broadly, Baskerville's State convictions cannot qualify as "serious drug offenses" under the ACCA.

7

*See also United States v. House*, 31 F.4th 745, 754 (9th Cir. 2022) (rejecting argument on other plain-error grounds, but observing that Montana law swept broader than the federal definition of cocaine relating to Ioflupane where Montana law, like Pennsylvania law, did not expressly exclude or mention that substance). Thus, the ACCA does not and cannot apply to him. That would also mean that U.S.S.G. § 4B1.4, tied to the ACCA, does not apply when the court calculates the Sentencing Guidelines.

### B.    Alternatively, The ACCA Is Unconstitutional As Applied.

Baskerville alternatively objects because application of the ACCA (and § 4B1.4), violates his Eighth Amendment right to be free from the infliction of cruel and unusual punishment. The Eighth Amendment provides that "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." U.S. Const. amend. VIII. As it concerns the prohibition on "cruel and unusual punishment," the Eighth Amendment operates on a "narrow proportionality principle" that "applies to noncapital sentences." *Ewing v. California*, 538 U.S. 11, 22 (2003). Courts are to consider "all of the circumstances of [a] case," comparing: (1) the gravity of the offense with the severity of a sentence; (2) the defendant's sentence with the sentences received by others in the same jurisdiction; and (3) sentences imposed for the same crime in other jurisdictions. *Graham v. Florida*, 560 U.S. 48, 59, 60 (2010).

In considering whether the Eighth Amendment has been violated, "all of the circumstances of the case" must be considered. *Graham*, 560 U.S. at 59; *see Solem v. Helm*, 463 U.S. 277, 290 (1983) ("When sentences are reviewed under the Eighth Amendment, courts should be guided by objective factors"). That is why it is not relevant whether another court has found the ACCA (or U.S.S.G. § 4B1.4) unconstitutional. The current circumstances present a gross disproportionality between the gravity of the offense and the harshness of the mandatory minimum under the ACCA (and even the enhanced Guidelines range under § 4B1.4).

The instant conviction did not involve use of violence. The crime was committed, at least as determined by the jury, "though [Baskerville] gain[ed] nothing and injure[d] nobody." *Weems v. United States*, 217 U.S. 349, 365 (1910). Relatedly, the government has not come forward with sufficient evidence that Baskerville possessed a firearm compatible to the ammunition that he was convicted of possessing. Nor did the government show that Baskerville intended to use any weapon in any crime or provide the ammunition to someone else who would. And, although Baskerville has previous convictions, they are not for violent crimes. Moreover, three of the four convictions that Probation relies on to apply the ACCA to Baskerville are nearly 30 years old. (Doc. 174, ¶¶ 24, 26–27.)

It is indisputable that a minimum sentence of 15 years is harsh and severe by any measure. Under Pennsylvania law, Baskerville's possession of ammunition alone is not even a crime. *See* 18 PA. CONS. STAT. § 6105 (Persons Not to Possess). Accordingly, he would not be subject to any punishment in that jurisdiction for similar conduct, let alone a 15-year sentence.  But that is not all.  If the ACCA applies and Baskerville is subject to an increased offense level (33 or 34) and criminal-history category (V or VI) under § 4B1.4, the district court's lodestar at sentencing would significantly exceed the mandatory minimum compared to what the Guidelines would advise with an offense level 24 or 20, and criminal-history category V. The harshness of the mandatory minimum under the ACCA (as well as under § 4B1.4) is grossly disproportionate to Baskerville's conviction.

## THE CALCULATED GUIDELINES SENTENCE

Baskerville also has Guidelines-specific objections. Because these objections could trigger different outcomes, depending on whether the ACCA applies, he proceeds in two phases. First, Baskerville addresses objections to the Guidelines if the ACCA does not apply. Second, he addresses objections if the ACCA applies.

**A.      Objections If The ACCA Does Not Apply**

      **1.      Baskerville Does Not Have A "Controlled Substance Offense" For Purposes Of U.S.S.G. § 2K2.1.**

If the ACCA does not apply, then Probation calculates Baskerville's offense level in accordance with U.S.S.G. § 2K2.1. Throughout that section, including § 2K2.1(a)(2), are references to "controlled substance offense." The Commentary defines the term by cross-referencing the definition in U.S.S.G. § 4B1.2(b). U.S. Sentencing Guidelines Manual § 2K2.1, cmt. n. 1 (U.S. Sentencing Comm'n 2021).

Section 4B1.2(b) defines "controlled substance offense" as:

> [A]n offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S. Sentencing Guidelines Manual § 4B1.2(b) (U.S. Sentencing Comm'n 2021).

Here, Baskerville contends that he does not have a qualifying "controlled substance offense" because Pennsylvania's definition of cocaine sweeps broader than the federal definition under the federal Schedules, as of September 2015. The same analysis discussed above with respect to the ACCA should apply and lead to the conclusion that Baskerville advances, resulting in an offense level of 12 under

U.S.S.G. § 2K2.1(a)(7). *See Miller*, 480 F. Supp. 3d at 617–23; *Jamison*, 502 F. Supp. 3d at 927–30; *United States v. Lewis*, No. 20-583, 2021 WL 3508810, at *2–*11 (D.N.J. Aug. 10, 2021), *appeal pending*, No. 21-2621 (3d Cir.); *cf. also Brown*, 2022 WL 3711868, at *6 (observing that, in the <u>immigration context</u>, courts look to the elements of the federal offense at the time of the state conviction because that is when deportability – the federal consequence of the state conviction – is triggered).[1] Rather than repeat it, Baskerville incorporates the above ACCA analysis and argument as though similarly applicable and set forth here in full.

### 2. No Adjustment Is Warranted Under U.S.S.G. § 2K2.1(b)(6)(B).

According to Probation, Baskerville "possessed a firearm or ammunition in connection with another felony offense (drug trafficking)." (Doc. 174, ¶ 14.) Probation therefore asserts that a four-level adjustment to his offense level is warranted under § 2K2.1(b)(6)(B). (*Id.*) Baskerville objects.

---

[1] Each cited district court decision, which concerned marijuana, also adopted the view of the Second, Fifth, Eighth, and Ninth Circuits that the term "controlled substance" within U.S.S.G. § 4B1.2(b) refers to the drugs in the federal Schedules. Regardless of the court's decision on this aspect of the analysis for Guidelines purposes, it would not impact the court's analysis involving the ACCA. *See* U.S. SENTENCING GUIDELINES MANUAL § 4B1.4 cmt. n. 1 (U.S. SENTENCING COMM'N 2021) ("It is to be noted that the definitions of "violent felony" and "serious drug offense" in 18 U.S.C. § 924(e)(2) are not identical to the definitions of "crime of violence" and "controlled substance offense" used in §4B1.1 (Career Offender)").

Section 2K2.1(b)(6)(B) provides that a four-level adjustment applies if a defendant possessed "any firearm or ammunition in connection with another felony offense[.]" U.S. SENTENCING GUIDELINES MANUAL § 2K2.1(b)(6)(B) (U.S. SENTENCING COMM'N 2021). Application Note 14(B) further provides, in part, that the adjustment applies "in the case of a [felony] drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia." That is "because the presence of the firearm has the potential of facilitating another felony offense or another offense, respectively." U.S. SENTENCING GUIDELINES MANUAL § 2K2.1(b)(6)(B), Note 14(B) (U.S. SENTENCING COMM'N 2021).

In *United States v. Perez*, the Third Circuit held that Note 14(B) "creates a rebuttable presumption that the [adjustment] should apply for a drug-trafficking offense when a firearm is found in close proximity to drugs or related items." 5 F.4th 390, 400 (3d Cir. 2021). So, after *Perez*, "a court may presume that a firearm is . . . possessed in connection with a drug-trafficking offense if the firearm [wa]s found in close proximity to drugs or related items." *Id.* "But because the presumption is rebuttable, a defendant may present evidence that the firearm had no relationship to drug-related activities (i.e., that the presence of the firearm was mere accident or coincidence) and thus did not have the potential to facilitate a drug-trafficking offense." *Id.*

13

Accordingly, "the initial burden of proving that the presumption applies still rests with the government. It is only after the government has carried its burden – by showing that the guns and drugs were physically near each other – that the defendant must disprove a connection." *Id.* at 400 n. 3. Of course, "the primary inquiry . . . must be whether there is a relationship between the firearm and the defendant's drug-trafficking offense." *Perez*, 5 F.4th at 401.

The government cannot establish by a preponderance of the evidence the existence of a "felony offense (drug trafficking)." (*See* Doc. 174, ¶ 14.) Aside from purportedly having illegal window tint, the interaction with Baskerville stemmed from a law-enforcement observation that he may have been smoking marijuana. Thus, the marijuana found on him and inside the car was more likely than not for personal use. That is further supported by the fact that law enforcement did not seize money or drug-packaging materials from Baskerville or the car. Moreover, according to Baskerville, the scale inside the car was small, for personal use, and the other cell phones were old phones that belonged to relatives.

Next, the .38 caliber firearm should not be considered. The jury acquitted Baskerville of possessing it, and the trial evidence fails to demonstrate that he possessed it by a preponderance of the evidence: Daniel Westman found the firearm three weeks after Baskerville's arrest; Westman traversed the area where the firearm was found on multiple occasions without observing the object in that

14

same location; the arresting officer did not observe Baskerville make a throwing motion when Baskerville got out of his car; the arresting officer did not hear a firearm hit the ground or nearby objects; and law enforcement did not find the firearm despite searching the area where the arrest occurred.

Regarding the ammunition, even if the government could successfully prove a "felony offense (drug trafficking)" to trigger the *Perez* assumption, the adjustment is still inapplicable.  The ammunition and marijuana were in separate compartments. The car was co-owned by Baskerville's ex-wife. The ammunition was non-functional without a firearm, making its accessibility worthless. And law enforcement never observed Baskerville engage in drug transactions from the vehicle that contained the ammunition.

In sum, there is no relationship between the ammunition and any felony drug-trafficking offense to apply the four-level adjustment under U.S.S.G. § 2K2.1(b)(6)(B). Baskerville's total-offense level, instead, should be 12. And combined with criminal-history category V, the Guidelines range should be 27–33 months.

### B.    Objections If The ACCA Applies

If the ACCA applies, Baskerville is not subject to an increased offense level or criminal-history category under U.S.S.G. §§ 4B1.4(b)(3), (c)(2).

Section 4B1.4 expressly applies to defendants subject to the ACCA. U.S. SENTENCING GUIDELINES MANUAL § 4B1.4(a) (U.S. SENTENCING COMM'N 2021). The same provision provides that the offense level is the greatest of four options: (i) the calculated offense level under Chapters two and three of the Guidelines; (ii) the career-offender offense level, if applicable; (iii) level 34 "if the defendant used or possessed the firearm in connection with . . . a controlled substance offense"; or (iv) level "33, otherwise." U.S. SENTENCING GUIDELINES MANUAL § 4B1.4(b) (U.S. SENTENCING COMM'N 2021). As well, section 4B1.4 provides that the criminal-history category is the greatest of four options: (i) the category calculated based on criminal-history points under Chapter Four of the Guidelines; (ii) the category for career offenders; (iii) "Category VI, if the defendant used or possessed the firearm or ammunition in connection with . . . a controlled substance offense"; or (iv) Category IV. U.S. SENTENCING GUIDELINES MANUAL § 4B1.4(c) (U.S. SENTENCING COMM'N 2021).

Unlike § 2K2.1(b)(6)(B), above, section 4B1.4 does not consist of commentary or application notes suggesting presumptions or burden shifting. The text of § 4B1.4(b)(3) and § 4B1.4(c)(2) also fails to suggest as much. Thus, under § 4B1.4, there are no presumptions that the provisions apply. The government must prove by a preponderance of the evidence (i) that a defendant possessed a firearm or ammunition <u>and</u> (ii) a connection between the possession and any crime of

16

violence or controlled-substance offense. The government cannot satisfy its burden.

The government cannot prove the existence of a correlative "controlled substance offense" in this case. Likewise, for reasons already stated, the government cannot prove by a preponderance of the evidence that Baskerville possessed a firearm on the night of his arrest. And based on the reasons that Baskerville previously asserted as grounds for disproving a connection under § 2K2.1(b)(6)(B) between the ammunition and any drug-trafficking offense, the government equally cannot prove a connection between the ammunition and any controlled-substance offense for purposes of § 4B1.4.

If the ACCA and § 4B1.4 apply, Baskerville is not subject to an enhanced offense level or criminal history category. His offense level should be 33 and criminal-history category V, resulting in a Guidelines range of 210–262 months.

### THE SECTION 3553 SENTENCING FACTORS[2]

Concerning the Section 3553 sentencing factors, they mandate that district courts impose a sentence "sufficient but not greater than necessary" to comply with the purposes of sentencing reflected therein. 18 U.S.C. § 3553(a). If the court sustains Baskerville's objections concerning the ACCA and U.S.S.G. § 2K2.1, a

---

[2] Baskerville addresses these factors without the benefit of character letters, which are not due until September 22, 2022. (Doc. 178.)

time-served sentence meets § 3553(a)'s just-punishment goals. Alternatively, if the ACCA applies, a 15-year mandatory-minimum sentence achieves the same ends.

Baskerville is currently 44 years old.   (Doc. 174, p. 2.) He has a good relationship with his 67-year-old mother and adult daughter. (*Id.*, ¶¶ 48, 50.)  A time-served sentence will allow Baskerville to continue with those relationships. If, however, the court sentences Baskerville to 15 years' imprisonment under the ACCA, he will be in his 50's when released (with credit for time served).  Not only will Baskerville have missed out on over a decade of earning potential, but more importantly he will have lost out on significant time with his mother and daughter. And they, in turn, will have lost significant access to their son and father.

The court should also consider that a time-served sentence, if the ACCA does not apply, would not result in an unwarranted sentencing disparity. According to the Sentencing Commission's Interactive Data Analyzer, between 2015 and 2021, male United States Citizens with a high-school degree or educational equivalency, 41–50 years old, convicted of firearms offenses, with a criminal-history category V, were sentenced on average to up to 59 months' imprisonment. *See* U.S. Sentencing Commission, Interactive Data Analyzer, https://ida.ussc.gov/analytics/saw.dll?Dashboard.  Likewise, only 10.4% of the same category of defendants were sentenced to more than 120-months. *Id.* Thus, although under the ACCA Baskerville's criminal-history category would

automatically convert to VI, when evaluating him upon certain of his individual characteristics, a statutory-minimum sentence of 15 years (or 180-months) imprisonment would be far from a statistical anomaly.

What is more, the likelihood of Baskerville reoffending again will continue to diminish as he ages. There is a direct correlation between age and recidivism. *See* U.S. Sentencing Comm'n, Recidivism of Federal Offenders Released in 2010, Figure 12 & Table 4 (2021). As a defendant gets older, (s)he is less likely to reoffend. *Id.* And "[e]ven those individuals who commit crimes at . . . highe[r] rates begin to change their criminal behavior as they age." National Institute of Justice, *Five      Things      About      Deterrence*      (May      2016), https://www.ojp.gov/pdffiles1/nij/247350.pdf. Baskerville, at 44 years old, is within an age group that is already less likely to reoffend in comparison to younger offenders.

Finally, the government has not identified any victims. Thus, assuming he even had the resources to do so, there are no victims for which there is a need for Baskerville to pay restitution.

After considering these items, Baskerville respectfully requests the court to impose a time-served sentence. If the court determines that the ACCA applies, then Baskerville alternatively requests that the mandatory-minimum be imposed.

## CONCLUSION

For the foregoing reasons, the court should sustain Baskerville's objections to application of the ACCA and the PSR and, upon review of the § 3553(a) sentencing factors, sentence him to time served. Alternatively, if the ACCA applies, the court should sentence Baskerville to the 15-year mandatory minimum.

Respectfully submitted,

Date: August 31, 2022

*/s/ K. Wesley Mishoe*
Barbara A. Zemlock (No. 58891)
K. Wesley Mishoe (No. 321983)
**TUCKER ARENSBERG, P.C.**
300 Corporate Center Drive, Ste. 200
Camp Hill, PA 17011
(717) 221-7961
bzemlock@tuckerlaw.com
wmishoe@tuckerlaw.com

*Counsel for Ronsheek J. Baskerville*

## <u>CERTIFICATE OF SERVICE</u>

I, K. Wesley Mishoe, Counsel for Defendant Ronsheek J. Baskerville, certify that I served a copy of the foregoing on the following via ECF:

Scott R. Ford
Assistant United States Attorney
United States Attorney's Office
228 Walnut Street, Room 220
Harrisburg, PA 17108
Scott.R.Ford@usdoj.gov

*Counsel for the government*

Date: August 31, 2022                    <u>*/s/ K. Wesley Mishoe*</u>
                                         K. Wesley Mishoe

21