IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : Crim. No. 1:19-CR-0033 |
| | : |
| v. | : |
| | : |
| RONSHEEK J. BASKERVILLE | : Judge Jennifer P. Wilson |

## ORDER

Before the court are several objections to the Presentence Report filed by Defendant Ronsheek J. Baskerville ("Baskerville"). (Docs. 175, 179.) Following a jury trial, Baskerville was convicted of one count of felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1). He is scheduled for sentencing in this matter on September 29, 2022. For reasons that follow, the court sustains the objections to the application of the Armed Career Criminal Act ("ACCA") and United States Sentencing Guideline § 2K2.1(a)(2), each of which significantly enhance Baskerville's advisory guideline range, and overrules as moot the constitutional objections to those enhancements and the objection to the criminal history category. The remaining objections will be addressed at the sentencing hearing.

**PROCEDURAL HISTORY**

On January 23, 2019, Baskerville was charged in a one-count indictment with felon in possession of a firearm and ammunition, in violation of 18 U.S.C.

1

§ 922(g)(1). (Doc. 1.) On August 22, 2019, a superseding indictment was filed, in which Baskerville was charged with the same offense, but with the elements modified to address the intervening Supreme Court decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019) (holding that the Government must prove both that the defendant knew he possessed a firearm or ammunition and that he knew he had a predicate conviction). (Doc. 24.) Baskerville proceeded to a jury trial and, on March 15, 2022, the jury found him guilty of the offense of felon in possession of a firearm or ammunition. (Doc. 149.) In response to a special interrogatory, the jury found that Baskerville possessed ammunition, but not a firearm. (*Id.*) Following the verdict, Baskerville filed a pro se and, later, a counseled motion for judgment of acquittal or new trial. (Docs. 156, 167.) After full briefing, the court denied Baskerville's motions on September 20, 2022. (Docs. 180, 181.)

      A final Presentence Investigation Report ("PSR") was submitted on August 11, 2022. (Doc. 174.) The PSR finds that Baskerville has four prior Pennsylvania convictions involving possession with intent to deliver cocaine. (Doc. 174, ¶ 19 (referencing PSR ¶¶ 24, 26, 27, 31).) The PSR categorizes all four prior convictions as "serious drug offenses" under U.S.S.G § 4B1.4, resulting in the conclusion that Baskerville is subject to the ACCA enhancement. (*Id.* ¶ 19.) Alternatively, the PSR indicates that if Baskerville is found not to be an Armed Career Criminal, then his base offense level would be 24 pursuant to U.S.S.G.

§ 2K2.1(a)(2) because he has at least two prior "controlled substance offenses" as defined in U.S.S.G. § 4B1.2. (Doc. 174, ¶ 13 (referencing PSR ¶¶ 27, 31), explained in Doc. 175, p. 2.)[1]

Baskerville lodged several objections to the PSR relating to his classification as an Armed Career Criminal, the potential application of § 2K2.1(a)(2), and the constitutionality of the ACCA and § 2K2.1(a)(2), as well as a four-level enhancement for possessing ammunition in connection with another felony offense, and his criminal history category. (Doc. 175.) On August 31, 2022, Baskerville timely filed a sentencing memorandum addressing these objections as well as additional arguments under 18 U.S.C. § 3553(a). (Doc. 179.) The Government filed a responsive sentencing memorandum on September 22, 2022, and Baskerville filed a reply on September 25, 2022. (Docs. 185, 188.)

## DISCUSSION

Baskerville lodged several objections to the PSR, two of which the court addresses in this order.[2] First, Baskerville argues that the ACCA does not apply because he does not have the required previous convictions for a "violent felony"

---

[1] For ease of reference, the court uses the page numbers from the CM/ECF header.

[2] The court finds it unnecessary to rule on all outstanding objections in this order. Baskerville's objections regarding the constitutionality of the ACCA and U.S.S.G. § 2K2.1(a)(2), as well as his criminal history category under U.S.S.G. § 4B1.4(b)(3) and (c)(2), are moot given the court's holding in this order. The remaining objections and sentencing arguments raised in the sentencing memoranda will be addressed at the sentencing hearing.

or "serious drug offense." (Doc. 175; Doc. 179, pp. 3–8.) Second, Baskerville argues that he does not have the necessary "controlled substance offenses" for purposes of U.S.S.G. § 2K2.1(a)(2). The court will address each objection in turn.

**A. The ACCA does not apply based on Baskerville's prior convictions.**

The ACCA imposes a fifteen-year mandatory minimum sentence on a person who violates 18 U.S.C. § 922(g) and has at least three prior state or federal convictions for violent felonies or serious drug offenses that were committed on different occasions. 18 U.S.C. § 924(e)(1). The PSR does not indicate that Baskerville has a prior conviction that could qualify as a violent felony, instead hinging the ACCA classification solely on prior drug offenses. Thus, the court must determine whether Baskerville's four prior Pennsylvania drug offenses qualify as "serious drug offenses."

A "serious drug offense" is defined as an offense under the Controlled Substances Act ("CSA"), 21 U.S.C. § 802, as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. § 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A). When assessing whether a prior state offense qualifies as a "serious drug offense" for purposes of the ACCA, the court must examine whether the elements of the state

crime are different from or broader than the generic federal version of that crime. *United States v. Henderson*, 841 F.3d 623, 627 (3d Cir. 2016). If the court concludes that "the state law governing a particular offense criminalizes more conduct than its generic federal counterpart, then a state conviction for that offense may not count toward the ACCA's requirement of three prior offenses." *United States v. Brown*, 47 F.4th --- , 2022 WL 3711868, at *2 (3d Cir., Aug. 29, 2022) (citations omitted). Thus, the court must compare the federal and state laws using the "categorical approach," which requires the court to "look solely at the elements of the compared crimes and to ignore the particular facts of a case." *Id.* (citing *United States v. Dahl*, 833 F.3d 345, 349, 353 (3d Cir. 2016); *Mathis v. United States*, 549 U.S. 500, 504 (2016)).

Here, Baskerville argues that all four of his prior Pennsylvania convictions involve possession with intent to distribute cocaine and do not qualify as "serious drug offenses" because those crimes are broader than the federal counterpart. Pennsylvania's drug possession and distribution offense is divisible by drug type, thus requiring the "modified categorical approach." *Brown*, 2022 WL 3711868 at *2 n.1 (citing *United States v. Abbott*, 748 F.3d 154, 158–59 (3d Cir. 2014); *Henderson*, 841 F.3d at 625). However, the parties in this case do not dispute that the controlled substance at issue in all four of Baskerville's prior Pennsylvania convictions was cocaine or that the maximum sentence exceeded 10 years in each

case. (Doc. 179, p. 3; Doc. 185, p. 6 n.2.) The *Shepard* documents submitted by the Government show that the specific offenses of conviction in paragraphs 24, 26, 27, and 31 of the PSR were under 35 PA. STAT. AND CONS. STAT. § 780-113(a)(30). Thus, while the court is employing the modified categorical approach, it need not conduct an in-depth analysis here in light of the parties' agreement on this point.

In determining whether the Pennsylvania law is broader than the federal law, the court examines the elements of the state conviction at the time of those convictions. *McNeill v. United States*, 563 U.S. 816, 820 (2011); *see also Brown*, 2022 WL 3711868 at *6. As to the federal counterpart, the court looks to the federal law in effect when Baskerville committed the federal offense. *Brown*, 2022 WL 3711868 at *3–7.

The parties do not have a dispute regarding the operative language in the respective state and federal statutes. (*See* Doc. 179, pp.6–7; Doc. 185, pp. 9–10.) Pennsylvania's definition of cocaine at the time of each of Baskerville's prior convictions in 1995, 1998, and 2016 is:

> Coca leaves and any salt, compound, derivative, or preparation of coca leaves, and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, but shall not include decocainized coca leaves or extracts of coca leaves, which extracts do not contain cocaine or ecgonine.

35 PA. STAT. AND CONS. STAT. § 780-104(2)(i)(4). In September 2015, [$^{123}$I]Ioflupane was removed from the federal definition of cocaine because of its

potential value as a diagnostic tool for Parkinson's disease. 80 Fed. Reg. 54715, 54716–17. The federal definition of cocaine as of January 27, 2018, the day of Baskerville's federal offense, was:

> Coca leaves (9040) and any salt, compound, derivative or preparation of coca leaves (including cocaine (9041) and ecgonine (9180) and their salts, isomers, derivatives and salts of isomers and derivatives), and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, except that the substances *shall not include*:
>
> > (i) Decocainized coca leaves or extraction of coca leaves, which extractions do not contain cocaine or ecgonine; or
> >
> > (ii) [$^{123}$I]Ioflupane.

21 C.F.R. 1308.12(b)(4) (emphasis added).

The Government submits that the exclusion of [$^{123}$I]Ioflupane from the federal definition of cocaine in 2015 "does not render the Pennsylvania statute categorically broader than the federal definition in any meaningful way." (Doc. 185, p. 12.) The court disagrees.

Conducting an element-by-element comparison, it is quite clear that the Pennsylvania definition of cocaine was broader than the federal definition at the time Baskerville committed the § 922(g) offense on January 27, 2018, because Pennsylvania did not exclude [$^{123}$I]Ioflupane from the definition of cocaine. *See also United States v. Jackson*, 36 F.4th 1294 (11th Cir. 2022) (holding that Florida's possession with intent to sell cocaine statute, which criminalized

7

ioflupane, was broader than the federal equivalent, thus, defendant's Florida convictions were not predicate "serious drug offenses" under the ACCA); *United States v. Perez* (same holding but with regard to Iowa's delivery of cocaine statute). Pennsylvania law criminalizes the trafficking of ioflupane, while the federal law does not.

The Government argues that this conclusion should not end the inquiry. The Government contends that Baskerville must also show that there is a realistic probability that Pennsylvania would prosecute an individual for possessing [$^{123}$I]Ioflupane with the intent to distribute it. (Doc. 185, pp. 15–26.) To support the assertion that this additional analysis is required, the Government relies on decisions that are materially different from this case.

Contrary to the Government's assertion, resorting to the realistic probability analysis is only necessary when "legal imagination" is required to perceive a difference between the state and federal statutes. *See Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007) ("[T]o find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination to a state statute's language."); *see also Salmoran v. Att'y Gen. U.S.*, 909 F.3d 73, 77 (3d Cir. 2018) (noting that courts should be cautious in applying the realistic probability approach because it "is not an invitation to apply 'legal imagination' to the state offense; [rather] there must be 'a

realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime.'") (quoting *Moncrieffe v. Holder*, 569 U.S.184, 191 (2013)). As summarized by the Third Circuit, "where the elements of the crime of conviction are not the same as the elements of the generic federal offense, we explained, we believe the realistic probability language (or, the realistic probability inquiry) of *Moncrieffe* is simply not meant to apply." *Salmoran*, 909 F.3d at 81 (cleaned up) (quoting *Singh v. Att'y Gen.*, 839 F.3d 273, 286 (3d Cir. 2016)).

    The Government submits that the Third Circuit required the defendant to meet the realistic probability standard in *United States v. Glass*, 904 F.3d 319 (3d Cir. 2018). (Doc. 185, p. 17 n.5.) In *Glass*, the court outlined four reasons for rejecting the defendant's argument that "a mere offer to sell drugs" is *implied* in the Pennsylvania drug trafficking statute. *Id.* at 322–23. In discussing these reasons, the court stated that the parties did not cite any authority "suggesting Pennsylvania would prosecute a mere offer to sell" under the statute at issue. *Id.* at 323. While the court referenced the lack of evidence indicating a realistic probability of prosecution for a mere offer to sell drugs, there is a clear difference between the issue addressed in *Glass* and the issue here. In *Glass*, the plain language of the statute did not criminalize an offer to sell, but the defendant argued that criminalization of such conduct was implied. Here, the plain language of the

Pennsylvania statute criminalizes ioflupane and the federal counterpart does not. Simply put, there is no implied element in this case that requires legal imagination to examine, and thus no need to utilize the realistic probability analysis.

The court has reviewed the other decisions from outside of the Third Circuit that were cited by the Government in support of applying the realistic probability analysis. *See United States v. Holliday*, 853 F. App'x 53 (9th Cir. 2021); *United States v. House*, 31 F.4th 745 (9th Cir. 2022); *United States v. Taylor*, No. 20-cr-20449, 2022 WL 3447596 (E.D. Mich. Aug. 17, 2022). The court is not persuaded by the discussion in these decisions because the application of the realistic probability test has not been required in this Circuit in this context—where a comparison of the plain language of the state and federal statutes establishes that the state statute criminalizes more conduct than the federal statute.

As is clear, there is no "legal imagination" needed to identify the difference between the plain language of the state and federal laws in this instance. Pennsylvania criminalizes conduct—trafficking ioflupane—that the federal counterpart does not. While acknowledging that this difference exists, the Government asks the court to find that there is no realistic probability that $[^{123}I]$Ioflupane will become a street drug or that distribution of $[^{123}I]$Ioflupane will be prosecuted based on the pharmacological realities of this substance. (Doc. 185, pp. 15–26.) In response, Baskerville points out: "If, however, there truly was no

compelling reason to amend the definition of cocaine, then the federal government would not have amended its own definition, yet it did." (Doc. 188, p. 4.) Based on the court's review of caselaw, as already explained, there is no need to conduct a realistic probability analysis in order to conclude that the state law definition of cocaine is broader than the federal law definition. However, the court notes that the plain language of the state law makes clear that Pennsylvania officials are authorized to prosecute in the event that ioflupane is trafficked illegally, no matter the likelihood of that occurring.[3]

Accordingly, the court holds that Baskerville's prior convictions under Pennsylvania law for possession with intent to distribute cocaine, specifically, 35 PA. STAT. AND CONS. STAT. § 780-113(a)(30), are not "serious drug offenses" under the ACCA. Thus, the court sustains Baskerville's objection to the application of the ACCA as he does not have three or more "serious drug offenses" as required.

### B. Baskerville does not have a "controlled substance offense" for purposes of U.S.S.G. § 2K2.1(a)(2).

Because the court finds that the ACCA does not apply to Baskerville, it must determine whether Baskerville has at least two prior "controlled substance

---

[3] The court has also considered the Government's argument that this holding creates a "ridiculous result." The court need not state a position on that argument, because the court is not resolving the issue based on the impact of this ruling on any defendant other than Baskerville. Rather, the court is merely deciding how to resolve the objections raised by Baskerville based on application of controlling law on this issue.

offenses" under U.S.S.G. § 2K2.1(a)(2).  A base offense level of 24 applies "if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense."  U.S.S.G. § 2K2.1(a)(2).  Guideline section 4B1.2 defines "controlled substance offense" as:

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2.

To determine whether Baskerville's prior Pennsylvania convictions qualify as "controlled substance offenses," the court again begins with the categorical approach looking at only the elements of the statute of conviction, not the facts of the case.  *United States v. Williams*, 898 F.3d 323, 333 (3d Cir. 2018) (citing *United States v. Chapman*, 866 F.3d 129, 133 (3d Cir. 2017)).  Then, the court compares the elements of the Pennsylvania statute to the definition of "controlled substance offense" in U.S.S.G. § 4B1.2.  *Henderson*, 841 F.3d at 627.  Where, as here, the statute is "divisible," *i.e.* "it provides alternative elements for a conviction and thereby defines multiple crimes," the court must apply the modified categorical approach.  *United States v. Miller*, 480 F. Supp. 3d 614, 617 (M.D. Pa. 2020) (quotations omitted) (quoting *Henderson*, 841 F.3d at 627).  This approach

12

requires the court to determine "which alternative formed the basis of the defendant's prior conviction." *Henderson*, 841 F.3d at 627. Importantly, "[o]nly if the elements of the prior conviction match, or are narrower than, the federal crime will the prior offense qualify as a 'controlled substance offense'" under section 4B1.2. *Miller*, 480 F. Supp. 3d at 617–18 (citing *Dahl*, 833 F.3d at 349). The Third Circuit has consistently held that this approach applies to the relevant Pennsylvania drug trafficking statute. *See, e.g.*, *Abbott*, 748 F.3d at 159 (finding that the modified categorical approach applies to Pennsylvania's statute, 35 PA. STAT. AND CONS. STAT. § 780-113, because it is divisible by drug type).

Applying the modified categorical approach, the court turns to an element-by-element comparison between the Pennsylvania statute and generic federal crime. *Glass*, 904 F.3d at 321–22. Again, the only element contested by the parties is whether cocaine, as defined by Pennsylvania, is broader than the federal counterpart. (*See* Doc. 179, pp. 11–12; Doc. 185, pp. 27–33; Doc. 188, pp. 10–12.) To make this determination, the court must define "controlled substance" for purpose of this Guideline section as the Guidelines do not do so.

Other courts in this Circuit have grappled with this same issue, and concluded that the definition of "controlled substance" must be a drug listed in the CSA. *See Miller*, 480 F. Supp. 3d at 614 (holding that "controlled substance" must be a drug listed in the CSA and finding that Pennsylvania's statute for possession

13

with intent to deliver marijuana swept more broadly than its federal counterpart); *United States v. Jamison*, 502 F. Supp. 3d 923 (M.D. Pa. 2020) (same); *United States v. Lewis*, No. 20-583, 2021 WL 3508810 (D.N.J. Aug. 10, 2021) (same with regard to New Jersey's statute regarding marijuana); *United States v. Scott*, No. 18-547, 2021 WL 6805797 (D.N.J. Dec. 6, 2021) (same but analyzing New Jersey's drug trafficking statute regarding cocaine, which included ioflupane, while the federal counterpart does not).

In *Miller*, the court detailed the same circuit split on this issue that the Government identifies in its brief in this case.  To summarize, the Second, Fifth, Eighth, and Ninth Circuits have held that a "controlled substance" under section 4B1.2(b) "*must* be one that is contained in the federal CSA's schedules." *Miller*, 480 F. Supp. 3d at 619–20 (collecting cases).  The Tenth Circuit has "signaled its agreement" with the Ninth Circuit. *Id.* at 620 (citing *United States v. Abdeljawad*, 794 F. App'x 745, 748 (10th Cir. 2019)).  On the other side of the split, the Sixth, Seventh, and Eleventh Circuits have found that "Section 4B1.2(b) does not explicitly cross-reference or import the federal CSA, whereas other definitions in the career-offender guideline and Section 2D1.1 specifically incorporate federal statutes." *Id.* at 620 (citing *United States v. Ruth*, 966 F.3d 642, 651–52 (7th Cir. 2020)).

Ultimately, *Miller* adopted the rationale of the Second, Fifth, Eighth, and Ninth Circuits, holding that "the term 'controlled substance' in Section 4B1.2(b) 'must refer exclusively to those drugs listed under federal law—that is, the federal CSA.'" *Id.* (quoting *United States v. Townsend*, 897 F.3d 66, 71 (2nd Cir. 2018)). In *United States v. Jamison*, the court recounted the analysis in *Miller* and noted that the Fourth Circuit had joined the Sixth, Seventh, and Eleventh Circuits in finding that the "plain meaning" of section 4B1.2(b) permitted either "federal or state law" to constitute a predicate offense. 502 F. Supp. 3d at 928–29 (quoting *United States v. Ward*, 972 F.3d 364, 372 (4th Cir. 2020)). Nonetheless, the court in *Jamison* reached the same conclusion reached in *Miller*—that the definition of "controlled substance" as referred to in § 4B1.2(b) must refer to the drugs listed in the CSA. *Id.* at 930–31.

Accordingly, following the analytical approaches taken in *Miller*, *Jamison*, *Scott*, and *Lewis*, the court finds that "controlled substance" as referred to in § 4B1.2(b) must refer to the drugs listed in the CSA. The court is persuaded by the detailed rationales provided by the courts in *Miller*, *Jamison*, *Scott*, and *Lewis*, and will not repeat the explanation here. Instead, the court will simply indicate agreement with several district court colleagues who have concluded that the plain text, policy, and history of the Sentencing Guidelines compel this result. *See*

*Miller*, 480 F. Supp. 3d at 619–21; *Jamison*, 502 F. Supp. 3d at 928–30; *Lewis*, 2021 WL 3508810 at *5–10; *Scott*, 2021 WL 6805797 at *5–11.

From this point, the final step in the analysis is to compare the definition of cocaine in the CSA on the date of the federal offense to Pennsylvania's statutory definition of cocaine on the dates of the prior convictions. This is the same analytical exercise completed in Section A regarding the ACCA. Rather than repeating the explanation, the court relies on the same analysis and holds that the Pennsylvania definition of cocaine is broader than the federal definition of cocaine under the CSA. Thus, the court sustains Baskerville's objection to the application of U.S.S.G. § 2K1.2(a)(2) to determine his base offense level.

## CONCLUSION

For the reasons stated herein, **IT IS ORDERED AS FOLLOWS**:

1) Baskerville's objection to the application of the ACCA is **SUSTAINED**;

2) Baskerville's objection to the application of U.S.S.G. § 2K1.2(a)(2) is **SUSTAINED**;

3) Baskerville's objections regarding the constitutionality of the ACCA and U.S.S.G. § 2K2.1, as well as his criminal history category under U.S.S.G. § 4B1.4(b)(3) and (c)(2), are **OVERRULED AS MOOT**; and

4) Based on the above rulings, Baskerville's base offense level is 14 pursuant to U.S.S.G. § 2K2.1(a)(6)(A).

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Dated: September 28, 2022              Middle District of Pennsylvania